NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CARL J. HOLDREN,<br><br>Petitioner,<br><br>v.<br><br>ADMINISTRATOR, NEW JERSEY STATE PRISON, *et al.*,<br><br>Respondents. | Civil Action No. 22-825 (MAS)<br><br>**OPINION** |

**SHIPP, District Judge**

This matter comes before the Court on Petitioner's petition for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2254. (ECF No. 1.) Following an order to answer, Respondents filed a response to the amended petition (ECF No. 13), to which Petitioner replied. (ECF No. 24). For the following reasons, this Court will deny the petition, and will deny Petitioner a certificate of appealability.

**I.   BACKGROUND**

In its opinion affirming Petitioner's conviction on direct appeal, the Superior Court of New Jersey, Appellate Division, summarized the factual background of Petitioner's conviction as follows:

> In November and December 2006, Detective Sergeant Jeffrey Burke of the NJSP was the lead detective in Operation Dawg Pound. NJSP's Street Gang Unit North had been conducting electronic surveillance for several months of Anthony Carter OG, or "Original Gangster," of the Sex Money Murder (SMM) set of the United Bloods Nation (Bloods) in New Jersey. Burke, who was qualified as an expert in gang terminology, gang culture and gang dynamics,

explained that a set is "a subgroup that falls underneath the Bloods" street gang. The two other top sets under the Bloods umbrella were: G-Shine and the Brims. In the end of 2006, SMM "was at war or beefing with G-Shine and Brims."

Burke explained the hierarchy of the Bloods street gang. The highest ranking member of a Bloods set is an "OG." Below that there are generals ranking from five star to one star, captain, lieutenant, sergeant and the lowest rank, "foot soldiers."

During the course of the investigation, a person known as "SB" showed up on a number of Carter's calls. Following his review of those calls, Burke surmised that SB, or "Soldier Boy," had a leadership role with SMM in Monmouth and Ocean counties. SB was identified as defendant Valdo Thompson. An order was obtained that authorized electronic surveillance of Thompson's phone on November 22, 2006. Burke was able to determine that Thompson was a four star general, and [Petitioner] Carl Holdren, also known as "Killa," was a lieutenant or LT.

At approximately midnight on November 22, 2006, Long Branch Police Department (LBPD) dispatched officers to investigate 911 reports that two men had been shot inside a residence on Hendrickson Avenue. Two victims, Michael Montgomery, a member of the Brims, and Keith Logan, a member of G-Shine, were found at the scene. Logan survived the shooting; Montgomery did not.

The NJSP identified defendants as suspects in the Montgomery/Logan shooting from calls intercepted before and after the shooting. Two days before the shooting, Quemere McClendon, an SMM member known as "Tragedy" or "Trag," called Carter to tell him that G-Shine members "tried to sleepwalk" him, which . . . meant they were trying to kill or seriously hurt him. McClendon asked for Carter's permission to retaliate and Carter gave him the go ahead. On November 22, 2006, the day of the shooting, Thompson called Carter to report the wrong person was killed and the Brims knew that SMM was responsible.

On December 28, 2006, Michael Stallworth, a Brims member known as "Lock," kidnapped and assaulted an SMM member named "Slash" in retaliation for Montgomery's murder. Stallworth called Thompson, admitted he kidnapped Slash and threatened additional violence.

As documented in the intercepted calls, Thompson directed that Stallworth be shot, and Holdren agreed to shoot him. Thompson

2

> laid out a plan for the killing. He ordered Zachery Butts, another SMM member, to obtain a rental car and deliver a gun to Holdren for the purpose of Killing Stallworth. Butts obtained a rental car, a 2006 Mitsubishi Galant, and the gun. The plan was foiled when the rental car was stopped for speeding by Lakewood Police and, acting on information received from NJSP, officers searched the car and recovered the gun.
>
> [Petitioner was] charged [along with others] . . . with first-degree racketeering . . . (count one); first-degree conspiracy to murder Logan . . . (count two); three counts of second degree possession of a weapon for an unlawful purpose . . . (counts three, five and twenty); first-degree attempted murder of Logan . . . (count four); first-degree purposeful or knowing murder of Montgomery . . . (count six); first-degree conspiracy to murder Stallworth (count nineteen); and first-degree attempted murder of Stallworth . . . (count twenty-one). [Petitioner was not charged in counts ten through seventeen of the indictment.]
>
> In addition, [Petitioner] was charged with second degree conspiracy to commit armed robbery . . . (count seven), an additional count of second-degree possession of a weapon for an unlawful purpose . . . (count eight) and first-degree armed robbery . . . (count nine). [Petitioner] was convicted by a jury on counts one through six, nineteen, twenty and twenty-one. He was found not guilty on counts seven, eight, and nine.

(ECF No. 14-9 at 2-6.)

## II.  LEGAL STANDARD

Under 28 U.S.C. § 2254(a), the district court "shall entertain an application for a writ of habeas corpus [o]n behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A habeas petitioner has the burden of establishing his entitlement to relief for each claim presented in his petition based upon the record that was before the state court. *See Eley v. Erickson*, 712 F.3d 837, 846-47 (3d Cir. 2013). Under the statute, as amended by the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), district courts are required to give

3

great deference to the determinations of the state trial and appellate courts. *See Renico v. Lett*, 559 U.S. 766, 772-73 (2010).

Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for a writ of habeas corpus unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). Federal law is clearly established for these purposes where it is clearly expressed in "only the holdings, as opposed to the dicta[,]" of the opinions of the United States Supreme Court. *See Woods v. Donald*, 575 U.S. 312, 316 (2015). "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Id.* Where a petitioner challenges an allegedly erroneous factual determination of the state courts, "a determination of a factual issue made by a State court shall be presumed to be correct [and the] applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

### III. DISCUSSION

#### A. Petitioner's Severance Claim

In his first claim, Petitioner asserts that the trial court erred in denying his motion to sever the counts of the indictment related to the attempted murder of Stallworth from the remaining RICO-related counts, notwithstanding their relatedness to the RICO scheme. The Appellate Division rejected this claim on direct appeal, finding that the counts were properly joined together

4

under state law as the counts were all clearly related and found no clear evidence of prejudice to Petitioner from the joining of the claims for trial as a result.

As the Supreme Court has explained, "[i]mproper joinder does not, in itself, violate the Constitution. Rather, misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial." *United States v. Lane*, 474 U.S. 438, 446 n.8 (1986). While "an important element of a fair trial is that a jury consider only relevant and competent evidence bearing on the issue of guilt or innocence, . . . a fair trial does not include the right to exclude relevant and competent evidence." *Zafiro v. United States*, 506 U.S. 532, 540 (1993). Mere allegations of prejudice or assertions that a defendant may have faired better at trial are insufficient to require counts be severed, and an actual showing of prejudice is instead required. *United States v. Reicherter*, 647 F.2d 397, 400 (3d Cir. 1981).

In Petitioner's case, the conspiracy to murder and attempted murder counts related to the scheme to kill Stallworth were directly alleged, and ultimately found by the jury to have been, part of the underlying RICO scheme of the SMM set, and thus the evidence of that scheme would have been relevant and admissible in the RICO trial even if the charges themselves were severed. Petitioner, therefore, was not prejudiced by these related charges being heard together by the same jury. As there was no prejudice to Petitioner from the joinder of the charges, and as it is clear in any event that the joinder of these charges did not render Petitioner's trial fundamentally unfair, the Court finds that Petitioner's severance related claims are without merit and fail to set forth a basis for finding a Due Process violation. Petitioner's severance related claims thus provide no basis for habeas relief.

5

### B.     Petitioner's Fourth Amendment Claims

Petitioner next asserts that the state courts improperly denied his motion to suppress evidence seized from the rented Mitsubishi Gallant, and that the failure to suppress that evidence amounts to a violation of his Fourth Amendment rights. In *Stone v. Powell*, 428 U.S. 465 (1976), however, the Supreme Court held that Fourth Amendment claims were not cognizable in habeas petitions brought under 28 U.S.C. § 2254 where a petitioner had been accorded a full and fair opportunity to litigate his suppression claims in the state courts. *Id.* at 494. Thus, so long as a habeas petitioner had a full and fair opportunity to be heard on his Fourth Amendment challenge in state court, he may not re-raise those claims in a habeas petition and any such claims are barred and may serve as no basis for habeas relief. *Marshall v. Hendricks*, 307 F.3d 36, 82 (3d Cir. 2002). As Petitioner had a full and fair opportunity to raise his Fourth Amendment claims both in the state trial court and on direct appeal, he is barred from raising those claims in this § 2254 matter. Petitioner's Fourth Amendment claims are thus barred and cannot serve as a valid basis for habeas relief.

### C.     Petitioner's Grand Jury Challenge

Petitioner argues that the state court erred in denying the motion to dismiss his indictment based on the prosecution's failure to present allegedly exculpatory evidence to the grand jury. The Appellate Division rejected this claim, finding that the omitted testimony in question was not exculpatory—it placed Petitioner at the scene of a shooting and did not exclude him as one of the shooters—and that the motion to dismiss was properly denied.

As an initial matter, the Court notes that the Fifth Amendment right to an indictment by grand jury is not applicable to state prosecutions, and therefore an error of state law as to such grand jury proceedings do not serve as a basis for relief. *See, e.g., United States ex rel. Wojtycha v. Hopkins*, 517 F.2d 420, 425 (3d Cir. 1975); *see also Wainwright v. Goode*, 464 U.S. 78, 86

(1983) (state court errors do not warrant relief in habeas "unless they rise for some other reason to the level of a denial of rights protected by the . . . constitution"); *Yough v. Lord*, No. 19-601, 2020 WL 6689854, at *9 (D.N.J. Nov. 13, 2020). Errors in grand jury proceedings are likewise rendered harmless by a subsequent guilty verdict from a petit jury. *See Yough*, 2020 WL 6689854, at *9; *see also United States v. Mechanik*, 475 U.S. 66, 72-73 (1986). Thus, even if Petitioner had identified a legitimate flaw in his grand jury proceedings, such a claim would likewise fail to state a basis for habeas relief absent some basis for showing that he was truly denied Due Process in his grand jury proceedings. *Yough*, 2020 WL 6689854, at *9; *see also Hopkins*, 517 F.2d at 425.

Here, Petitioner has identified no such error which would warrant relief. As explained by the state courts, (*see* ECF No. 14-9 at 9-11), the purported testimony of the witnesses that Petitioner believes was not put before the grand jury would have placed Petitioner at the scene of a shooting, near an armed compatriot. Although the proposed witnesses apparently did not see Petitioner with a gun, they also did not testify that Petitioner was not armed. Given that Petitioner was charged as both an accomplice and as a direct actor, his presence with an armed compatriot was not omitted exculpatory evidence, but was instead at least partially inculpatory. The statements in question did not directly negate Petitioner's guilt, and thus they were not required to be presented to the grand jury under state law. Because no presentment is required by federal law, Petitioner has not shown that he suffered a denial of Due Process as a result of his grand jury proceedings or the denial of his motion to dismiss his indictment. In any event, because Petitioner was ultimately convicted by a petit jury, any such defect would be harmless in this habeas matter, and would serve as no basis for habeas relief.

### D. Petitioner's Evidentiary Claims

Petitioner next asserts that the state courts erred in permitting his conviction to stand because the testimony provided by Detective DeVirgiliis on whether Petitioner's gang activity had

7

an effect on local commerce amounted to improper net opinion testimony. The Appellate Division determined that some portions of the detective's testimony did amount to improper net opinion testimony insomuch as Detective DeVirgiliis testified that he believed that the activity of the gang in which Petitioner was involved had an effect on local business and real estate values. The Appellate Division, nevertheless, found any error harmless as the lack of an evidentiary basis for that opinion was fully addressed on cross examination and the state in any event clearly proved that the gang had an effect on local commerce as it had engaged in selling guns and other items; further, the Appellate Division found that Detective DeVirgiliis had properly provided expert testimony as to those transactions and their effect on commerce. (*See* ECF No. 14-9 at 36.)

Because "[t]he Due Process Clause does not permit the federal courts to engage in a finely-tuned review of the wisdom of state evidentiary rules," see *Marshall v. Lonberger*, 459 U.S. 422, 438 n.6 (1983), claims challenging the admissibility of testimony or other evidence are normally considered questions of state law which are not cognizable in habeas corpus. *See Keller v. Larkins*, 251 F.3d 408, 416 n.2 (3d Cir. 2001) ("A federal habeas court . . . cannot decide whether the evidence in question was properly allowed under the state law of evidence"); s*ee also Estelle v. McGuire*, 502 U.S. 62, 67-70 (1991); *Wilson v. Vaughn*, 533 F.3d 208, 213-14 (3d Cir. 2008), *cert. denied*, 556 U.S. 1170 (2009). A habeas petitioner may therefore raise a habeas claim based on a state law evidentiary decision only where he can show that the admission of the evidence at issue denied him Due Process under the Fourteenth Amendment by depriving him of the "fundamental elements of fairness in [his] criminal trial." *Glenn v. Wynder*, 743 F.3d 402, 407 (3d Cir. 2014) (quoting *Riggins v. Nevada*, 504 U.S. 127, 149 (1992) (Thomas, J. dissenting)). "The Supreme Court has 'defined the category of infractions that violate 'fundamental fairness' very narrowly, based on the recognition that, beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation.'" *Id.* (quoting *Medina v. California*, 505 U.S. 437, 443

8

(1992)). "In order to satisfy due process, [Petitioner's] trial must have been fair; it need not have been perfect." *Id.* (citing *United States v. Hasting*, 461 U.S. 499, 508 (1983)). Thus, a Due Process violation will only occur in the context of a state court evidentiary ruling when that ruling was "so arbitrary or prejudicial that it rendered the trial fundamentally unfair." *Scott v. Bartkowski*, No. 11-3365, 2013 WL 4537651, at *9 (D.N.J. Aug. 27, 2013) (citing *Romano v. Oklahoma*, 512 U.S. 1, 12-13 (1994)).

The admission of Detective DeVirgiliis's testimony did not deprive Petitioner of a fundamentally fair trial. Although he may have provided an improper net opinion that gang activity affects business and property values, the majority of his testimony was properly admitted to explain gang communications and activities. The net opinion in question was ultimately harmless in light of the more than sufficient evidence that Petitioner and his cohorts had engaged in the trade of firearms, which, as discussed below, provides more than enough support for the conclusion that Petitioner's organization had an effect on commerce sufficient to provide for RICO liability. As the admission of the testimony did not render Petitioner's trial fundamentally unfair, that ruling provides no basis for habeas relief.

Petitioner also asserts that the trial court erred in failing to *sua sponte* strike testimony that a juvenile, identified as being a member of a rival gang, had been found in possession of a weapon, as he believes that testimony was irrelevant and prejudicial. Although the Appellate Division agreed that the admission of the evidence was largely irrelevant, the testimony was not prejudicial as it involved a member of a rival gang whose weapon possession cast no aspersions or implications upon Petitioner and his co-defendants, and was therefore harmless. (ECF No. 14-9 at 36-37.) This ruling did not have a propensity to render Petitioner's trial unfair. As the Appellate Division explained, the juvenile in question was a member of a rival gang whose activities had little ability to cast any doubt or suspicion on Petitioner's character, and it is exceedingly unlikely

that this outsider's possession of a weapon had any impact whatsoever on the jury's perceptions and conclusions as to Petitioner, especially in light of the significant evidence of Petitioner's guilt. Because the admission of this testimony, without objection, did not render Petitioner's trial fundamentally unfair, it provides no basis for habeas relief.

In his final challenge to the state courts' evidentiary rulings, Petitioner contends that the trial court erred by excluding testimony from the girlfriend of one of the victims that McClendon had bragged about committing one of the killings for which Petitioner was convicted, which Petitioner asserts was admissible as a statement against interest or a co-conspirator's statement by McClendon.[1] The Appellate Division rejected that argument because, even if McClendon's alleged braggadocio would have been otherwise admissible, the witness in question admitted to the trial court that McClendon never made this statement to her, and that she had instead heard of it from unspecified third parties "on the street," which makes the statement hearsay within hearsay and inadmissible. (ECF No. 14-9 at 40.) Given the multiple levels of hearsay involved, the unclear source of the rumored bragging to the victim's girlfriend, and the fact that even if McClendon had been involved it would not necessarily be exculpatory for Petitioner who was also subject to accomplice liability, this ruling did not rob Petitioner of a fundamentally fair trial and serves as no basis for habeas relief.

E.   **Petitioner's Sufficiency of the Evidence Claims**

Petitioner also asserts that the state court failed to prove one of the elements of the RICO conspiracy with which he was charged—that his gang activity affected trade and commerce. The

---

[1] Although Petitioner asserts that this decision amounted to a limit on cross-examination, it was not presented to the state courts nor in this matter as a Confrontation Clause issue. Even if it had been raised as such, this claim would still not serve as a basis for habeas relief as state courts are permitted to set reasonable limitations on cross-examination, such as the entirely reasonable limitation on hearsay accusations made by unspecified third parties who may not have been present for the event itself. *See, e.g., Wright v. Vaughn*, 473 F.3d 85, 93-94 (3d Cir. 2006).

Appellate Division rejected this argument, finding that there was more than adequate testimony indicating that the gang had engaged in both the purchase and sale of weapons and in drug trafficking, both of which sufficiently affect trade to support a conviction under the New Jersey state RICO statute. (ECF No. 14-9 at 38-39.)

When a habeas petitioner presents a claim challenging the sufficiency of the evidence produced at trial, "a reviewing court must ask 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Eley*, 712 F.3d at 847 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). A court sitting in habeas review may therefore overturn a conviction based on insufficient evidence only "if it is found that upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Id.* (quoting *Jackson*, 443 U.S. at 324). Under this "deferential federal standard," juries have "broad discretion in deciding what inferences to draw from the evidence presented at trial" and federal courts must not "unduly impinge[] on the jury's role as factfinder" by engaging in "fine-grained factual parsing." *Coleman v. Johnson*, 566 U.S. 650, 655 (2012).

As the Appellate Division explained to Petitioner, a conviction under the state RICO statute requires proof of only a "minor influence" on commerce, such as that the gang engaged in any "economic activity involving or relating to any commodity or service." (ECF No. 14-9 at 32.) The evidence produced at trial included testimony that the gang engaged in weapons transactions, which involve the requisite economic activity related to any commodity or service—specifically the selling and buying of firearms. Clearly, a rational juror could therefore have found the requisite minor impact on commerce, and the evidence as to that element was more than sufficient to support Petitioner's conviction. Petitioner's claims relating to the sufficiency of the evidence of the RICO conspiracy's impact on commerce thus serve as no basis for habeas relief.

Petitioner also argues that there was insufficient evidence to support his conviction for the attempted murder of Michael Stallworth as Petitioner believes there was no evidence that he took a substantial step towards the murder to support an attempt. The Appellate Division rejected this argument as meritless. The record at trial contained intercepted phone conversations during which Petitioner agreed to commit the murder of Stallworth, and made arrangements to have a pistol delivered to him for the purposes of committing the murder. Indeed, when the first plan fell through after the seizure of the Mitsubishi Galant, Petitioner attempted to make other arrangements to secure a weapon to use to murder Stallworth. (ECF No. 19-2 at 25-27.) The intercepted phone conversations were therefore more than sufficient to indicate that Petitioner had taken a substantial step towards committing the murder of Stallworth. Petitioner agreed to commit the killing, and then made multiple attempts to acquire a pistol and transportation to accomplish that goal. The evidence was more than sufficient to permit a rational juror to convict Petitioner of the attempted murder, and the state courts' refusal to acquit Petitioner on that basis thus fails to present a valid basis for habeas relief.

### F. Petitioner's Sentencing Claims

Petitioner next argues that his sentence was excessive and contrary to the Supreme Court's rulings in *Miller v. Alabama*, 567 U.S. 460 (2012), and its progeny regarding the sentencing of juveniles to life sentences without the possibility of parole. As federal courts do not have authority during habeas review to re-examine issues of state law, *Estelle*, 502 U.S. at 67-69, and "sentencing is a matter of state criminal procedure and [generally] does not involve such a denial of fundamental fairness as to fall within the purview of federal habeas corpus," alleged sentencing error by a state court will not warrant habeas relief unless the sentence imposed was outside of the range authorized by the crime in question or was otherwise beyond the sentencing judge's authority to give. *See, e.g., Sutton v. Blackwell*, 327 F. Supp. 2d 477, 486 (D.N.J. 2004) (quoting

*Grecco v. O'Lone*, 661 F. Supp. 408, 415 (D.N.J. 1987). On direct appeal, the Appellate Division determined that each of Petitioner's sentences was proper under state law and appropriate under the circumstances, and thus did not exceed the sentencing judge's authority or the applicable statutory ranges. Thus, to the extent that Petitioner argues his sentence was excessive, this Court is without authority to second guess the Appellate Division's determination, and that claim provides no basis for habeas relief.

Turning to *Miller*, the Appellate Division rejected Petitioner's claim because he fell outside of the group of individuals *Miller* and its progeny were intended to protect. In *Miller*, the Supreme Court held that state sentencing regimes which imposed sentences of "mandatory life without parole for those under the age of 18 at the time of their crimes" violated the Eighth Amendment unless those schemes permitted the sentencing judge to consider factors including the defendant's age and maturity in determining whether such a life sentence was appropriate. *See* 567 U.S. at 465-69. In *Miller* and subsequent cases, however, the Supreme Court has made abundantly clear that this rule only applies to schemes which impose life without parole on juvenile offenders, and that the rule in *Miller* in no way impacted or affected lesser sentences up to and including *life* with the possibility of future parole. *Id.*; *see also Montgomery v. Louisiana*, 577 U.S. 190, 212 (2016). Thus, *Miller* and its progeny apply only to those who were juveniles at the time of their offenses, received life without parole, and did not have an opportunity to have the sentencing judge consider their age and immaturity in determining the sentence.

Petitioner falls into none of these categories. He was over 18 at the time of the events in question, was not sentenced to life without the possibility of parole, and the sentencing judge explicitly considered his age and inexperience in arriving at the sentence. (*See* ECF No. 14-9 at 49-50.) *Miller* and its progeny thus do not apply, and serve as no basis for habeas relief.

G. **Petitioner's Cumulative Trial Error Claim**

Petitioner next contends that "the aggregate of errors" committed during his trial cumulatively rendered his trial unfair and warrant relief. The Third Circuit has found that:

> errors that individually do not warrant habeas relief may do so when combined. . . . [A] cumulative-error analysis merely aggregates all the errors that individually have been found to be harmless, and therefore not reversible, and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless. Cumulative errors are not harmless if they had a substantial and injurious effect or influence in determining the jury's verdict, which means that a habeas petitioner is not entitled to relief based on cumulative errors unless he can establish actual prejudice.

*Albrecht v. Horn*, 485 F.3d 103, 139 (3d Cir. 2007) (internal quotations and citations omitted), *cert. denied*, 552 U.S. 1108 (2008). The Appellate Division rejected Petitioner's cumulative error claim on direct appeal as meritless. Having reviewed the record, Petitioner's non-ineffective assistance claims all either fail to show that the state court erred or show at worst harmless error, as none of the errors that Petitioner complains about had a substantial and injurious effect on the outcome of his trial. As such, Petitioner's claims fare no better in the aggregate than they do individually, and Petitioner's cumulative error claim fails to set forth a valid basis for habeas relief.

H. **Petitioner's Ineffective Assistance of Counsel Claims**

In his final series of claims, Petitioner contends that he received ineffective assistance of trial counsel. The standard applicable to claims of ineffective assistance of counsel is well established:

> Claims of ineffective assistance are governed by the two-prong test set forth in the Supreme Court's opinion in *Strickland v. Washington*, 466 U.S. 668 (1984). To make out such a claim under *Strickland*, a petitioner must first show that "counsel's performance was deficient. This requires [the petitioner to show] that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687; *see also United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007). To

> succeed on an ineffective assistance claim, a petitioner must also show that counsel's allegedly deficient performance prejudiced his defense such that the petitioner was "deprive[d] of a fair trial . . . whose result is reliable." *Strickland*, 466 U.S. at 687; *Shedrick*, 493 F.3d at 299.
>
> In evaluating whether counsel was deficient, the "proper standard for attorney performance is that of 'reasonably effective assistance.'" *Jacobs v. Horn*, 395 F.3d 92, 102 (3d Cir. 2005). A petitioner asserting ineffective assistance must therefore show that counsel's representation "fell below an objective standard of reasonableness" under the circumstances. *Id.* The reasonableness of counsel's representation must be determined based on the particular facts of a petitioner's case, viewed as of the time of the challenged conduct of counsel. *Id.* In scrutinizing counsel's performance, courts "must be highly deferential . . . a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.
>
> Even where a petitioner is able to show that counsel's representation was deficient, he must still affirmatively demonstrate that counsel's deficient performance prejudiced the petitioner's defense. *Id.* at 692-93. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. The petitioner must demonstrate that "there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see also Shedrick*, 493 F.3d at 299. Where a "petition contains no factual matter regarding *Strickland's* prejudice prong, and [only provides] . . . unadorned legal conclusion[s] . . . without supporting factual allegations," that petition is insufficient to warrant an evidentiary hearing, and the petitioner has not shown his entitlement to habeas relief. *See Palmer v. Hendricks*, 592 F.3d 386, 395 (3d Cir. 2010). "Because failure to satisfy either prong defeats an ineffective assistance claim, and because it is preferable to avoid passing judgment on counsel's performance when possible, [*Strickland*, 466 U.S. at 697-98]," courts should address the prejudice prong first where it is dispositive of a petitioner's claims. *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002).

*Judge v. United States*, 119 F. Supp. 3d 270, 280-81 (D.N.J. 2015).

In his ineffective assistance of counsel claims, Petitioner contends that his trial counsel did not adequately meet and consult with him, and, as a result, counsel failed to call as witnesses the

two women discussed in Petitioner's grand jury claim above, Brianna Robinson and Nichelle Dupree. The Appellate Division rejected these claims, explaining as follows:

> [Petitioner's] argument is that Robinson and Dupree could have testified that he fired no shots, thereby supporting his overall defense, i.e., renunciation of any plot to shoot Logan[, based on their statements to police.] However, the PCR judge noted that Robinson and Dupree "placed [Petitioner] at the scene" of the fatal shooting, whispering to a "masked person whom they saw commit the shooting." As the trial judge noted in denying [a motion at trial], their statements included significant incriminating evidence. Moreover, during the trial judge's colloquy with counsel, the State revealed that it no longer knew where either witness was and had no ability to contact them. Trial counsel could hardly have rendered ineffective assistance under these circumstances.
>
> . . . the trial evidence [further undermines Petitioner's claim given Petitioner's] conflicting statements to police – first supplying a false alibi, then admitting to being present, finally admitting to being present but giving his gun to a third person and walking away before the shooting occurred. Additionally, there was ample proof in the taped conversations disputing [Petitioner's] claim that he left the scene before the shooting. Moreover, ballistic analysis of shells recovered at the scene of the shooting revealed they had been fired from two different weapons. That scientific forensic evidence certainly would have limited any impact of Robinson's and Dupree's testimony since neither one mentioned the presence of a third man at the shooting.
>
> Additionally, although not mentioned by the PCR judge, trial counsel's letter to [Petitioner] fully explained why he chose not to call Robinson or Dupree as witnesses, specifically, that he could not be sure exactly what they would say on the witness stand. He presumed the State might call them in order to place [Petitioner] at the scene, but, in the end, the prosecutor chose not to do so. At trial, the State did not call any witness present at the Long Branch shootings, including Logan himself. Instead, as trial counsel noted [in his letter], the State relied upon [Petitioner's] own incriminating words that not only placed [Petitioner] at the scene but detailed his actual involvement with the shooting pursuant to orders from the gang's leader. Counsel's exercise of trial strategy by not calling Robinson or Dupree was neither an example of deficient performance nor prejudicial[.]

(ECF No. 14-20 at 9-11.)

As the Appellate Division aptly explained, counsel's decision not to call Robinson or Dupree was neither deficient nor prejudicial. Both witnesses would have put Petitioner at the scene of the shooting, conferring with one of the individuals who engaged in the shooting, and could not put the second gun in any hand other than Petitioner's. Their testimony would thus hardly have been exculpatory, and, given Petitioner's own admissions in wiretapped communications, likely would not have altered the outcome of Petitioner's case at trial. Indeed, it is at best unclear if they would have been available as witnesses, and counsel himself clearly understood the massive risk for essentially no gain of calling them as witnesses. Petitioner thus failed to show that counsel was deficient or that he was prejudiced by counsel's refusal to call the two women as witnesses at trial. The Appellate Division's decision was neither contrary to nor an unreasonable application of *Strickland* and provides no basis for habeas relief.

Turning to Petitioner's final claim, he essentially argues that counsel did not meet with him enough and was therefore unprepared for trial. The Appellate Division rejected this claim as Petitioner failed to present any evidence as to what additional information or useful trial strategy could have been surmised from any additional meetings or discussions in light of the strong evidence of Petitioner's guilt and counsel's thorough cross examinations and arguments during the course of trial. (ECF No. 14-20 at 11-12.) As a petitioner cannot prevail on such a claim without a clear showing of what additional evidence would have resulted from additional preparation and investigation, the Appellate Division's rejection of Petitioner's bald contentions of insufficient discussion and preparation was neither contrary to nor an unreasonable application of *Strickland*. *See, e.g.*, *Brown v. United States*, No. 13-2552, 2016 WL 1732377, at *4-5 (D.N.J. May 2, 2016) (stating that a failure to investigate claim requires a comprehensive showing of what would have been obtained through further investigation and how it would have aided the petitioner's case to show prejudice). The state courts' rejection of Petitioner's ineffective assistance claims without a

hearing thus provides no basis for habeas relief, and Petitioner's habeas petition is therefore denied.[2]

## IV.   CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of his state court conviction unless he has "made a substantial showing of the denial of a constitutional right." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). "[A petitioner] satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude [that] the issues presented here are adequate to deserve encouragement to proceed further." *Id.* Because Petitioner's habeas claims are without merit for the reasons set forth above, he has failed to make a substantial showing of a denial of a constitutional right, and his petition is not adequate to receive encouragement to proceed further. This Court therefore denies Petitioner a certificate of appealability.

## V.   CONCLUSION

In conclusion, Petitioner's habeas petition (ECF No. 1) is **DENIED**, and Petitioner is **DENIED** a certificate of appealability. An appropriate order follows.

*/s/ Michael A. Shipp*
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

---

[2] In addition to the many claims discussed in this Opinion, Petitioner also initially sought to raise another claim which at the time was pending in a second state court PCR petition. (ECF No. 1 at 19-20.) Petitioner, however, withdrew that claim and chose to proceed only on his fully exhausted claims, discussed throughout this Opinion. (*See* ECF Nos. 5-7.)